**Fill in this information to identify the case:**

Debtor Name  Envia Holdings LLC

United States Bankruptcy Court for the: Northern District of California

Case number:  22-50489-MEH

☒ Check if this is an amended filing

## Official Form 425B

# Disclosure Statement for Small Business Under Chapter 11

12/17

## Envia Holdings, LLC's Disclosure Statement, Dated Sept. 7, 2022

 **Table of Contents.**

I. Introduction ........................................................................................................................... 3
   A. Purpose of This Document ................................................................................................ 3
   B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ......................... 3
   C. Disclaimer ......................................................................................................................... 4
II. Background .......................................................................................................................... 5
   A. Description and History of the Debtor's Business ............................................................. 5
   B. Insiders of the Debtor ....................................................................................................... 6
   C. Management of the Debtor During the Bankruptcy ........................................................... 6
   D. Events Leading to Chapter 11 Filing ................................................................................ 6
   E. Significant Events During the Bankruptcy Case ............................................................... 6
   F. Projected Recovery of Avoidable Transfers ..................................................................... 8
   G. Claims Objections ............................................................................................................ 8
   H. Current and Historical Financial Conditions .................................................................... 9
III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests ........... 9
   A. What Is the Purpose of the Plan of Reorganization? ....................................................... 9
   B. Unclassified Claims .......................................................................................................... 9
      1. Administrative expenses, involuntary gap claims, and quarterly and Court fees ........... 9
      2. Priority tax claims ..................................................................................................... 10
   C. Classes of Claims and Equity Interests .......................................................................... 11
      1. Classes of secured claims ......................................................................................... 11
      2. Classes of priority unsecured claims ......................................................................... 12
      3. Classes of general unsecured claims ......................................................................... 13
      4. Classes of equity interest holders ............................................................................. 14
   D. Means of Implementing the Plan .................................................................................... 14
      1. Source of payments .................................................................................................. 14
      2. Post-confirmation Management ................................................................................. 15
   E. Risk Factors ................................................................................................................... 15
   F. Executory Contracts and Unexpired Leases ................................................................... 16
   G. Tax Consequences of Plan ............................................................................................ 17
IV. Confirmation Requirements and Procedures ...................................................................... 17
   A. Who May Vote or Object ................................................................................................ 17
      1. What is an allowed claim or an allowed equity interest? ............................................ 18
      2. What is an impaired claim or impaired equity interest? .............................................. 18
      3. Who is not entitled to vote ........................................................................................ 19
      4. Who can vote in more than one class ........................................................................ 19
   B. Votes Necessary to Confirm the Plan ............................................................................. 19
      1. Votes necessary for a class to accept the plan .......................................................... 19

Case: 22-50489   Doc# 34   Filed: 09/08/22   Entered: 09/08/22 17:21:35   Page 1 of 42

    2. Treatment of non-accepting classes of secured claims, general unsecured  claims, and interests ....................19
  C. Liquidation Analysis...................................................................................................................... 20
  D. Feasibility .................................................................................................................................... 20
    1. Ability to initially fund plan ...................................................................................................... 20
    2. Ability to make future plan payments and operate without further reorganization ................20

V. Effect of Confirmation of Plan .............................................................................................................21
  A. Discharge of Debtor...................................................................................................................... 21
  B. Modification of Plan ..................................................................................................................... 21
  C. Final Decree................................................................................................................................... 22

VI. Other Plan Provisions ......................................................................................................................... 22
  Exhibit A:  Copy of Proposed Plan of Reorganization................................................................... 23
  Exhibit B: Identity and Value of Material Assets of Debtor .......................................................... 24
  Exhibit C: Prepetition Financial Statements................................................................................... 25
  Exhibit D: [Most Recently Filed Postpetition Operating Report] .................................................. 26
  Exhibit E: Liquidation Analysis ..................................................................................................... 27
  Exhibit F: Cash on hand on the effective date of the Plan ............................................................. 28
  Exhibit G: Projections of Cash Flow for Post-Confirmation Period .............................................. 29
    Exhibit H: List of General Unsecured Creditors……………………………………………… 29
    Exhibit I: Note and Addendum………………………………………………………………… 29

Case: 22-50489     Doc# 34     Filed: 09/08/22     Entered: 09/08/22 17:21:35     Page 2 of 42

## I. Introduction

This is the disclosure statement (the "*Disclosure Statement*") in the small business chapter 11 case of Envia Holdings LLC (the *Debtor*). This Disclosure Statement contains information about the Debtor and describes the Plan dated Sept. 7, 2022 (the "Plan") filed by the Debtor on Sept.8, 2022.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one

The proposed distributions under the plan are discussed beginning on Page 9 of this Disclosure Statement. General unsecured creditors are classified in Class 3 and will receive a 100% dividend of their allowed claims together with post-confirmation interest to be paid on the latter of the Effective Date or within 5 days of the sale of the Improved Property, Unimproved Property or Properties if Debtor's Properties sell with sufficient net proceeds to pay these claims in full. If the net proceeds of sale after paying secured claims are insufficient to pay general unsecured creditors in full, nonetheless general unsecured creditors will be paid in full, in part from the remaining proceeds of sale after payment of secured and administrative priority claims with the balance paid over 5 years, but without interest.

### A. Purpose of This Document

This Disclosure Statement describes:

- ■ The Debtor and significant events during the bankruptcy case,
- ■ How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- ■ Who can vote on or object to the Plan,
- ■ What factors the Bankruptcy Court (the *Court*) will consider when deciding whether to confirm the Plan,
- ■ Why The Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- ■ The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 3 of 42

section describes the procedures pursuant to which the Plan will or will not be confirmed.  A separate order has been entered setting the following information:

- The hearing at which the Court will determine whether to approve this Disclosure Statement will take place on Oct. 13, 2022 at 10:00 AM  in Courtroom 11, at the United States Bankruptcy Court, Northern District of California, San Jose Division at 280 So. First St., San Jose, CA 95113,

- Deadline for voting to accept or reject the plan:

   If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to The Fuller Law Firm, P.C., 60 No. Keeble Ave. San Jose, CA 95126.  See section IVA below for a discussion of voting eligibility requirements. Your ballot must be received by [ Date to be determined after approval of Disclosure Statement ]  or it will not be counted.

- Deadline for objecting to confirmation of the plan.

   Objections to this Disclosure Statement must be filed with the Court and served upon debtor, debtor's counsel, the Office of the United States Trustee and all parties requesting special notice by Oct. 6, 2022.

- Identifying of Person to Contact for More Information:

   If you want additional information about the Plan or the voting procedure, you should contact The Fuller Law Firm, P.C. 60 N Keeble Ave. San Jose, CA 95126 at 408-295-5595.

### C. Disclaimer

**The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.**

/ / /

/ / /

## II. Background

### A. Description and History of the Debtor's Business

Debtor is a single member CA Limited Liability Company. Nathaniel Villareal, the Designated Responsible Individual is its sole member. Debtor owns two continuous parcels of real property in Gilroy, CA. The first parcel, identified as 325 Denio Ave. #B  Gilroy, CA (APN 835-07-024) has a 3200 square foot primary home[1] , a gutted structure (warehouse or perhaps a second house) and two mobile homes ("Improved Property" hereinafter).  These improvements are on approximately 7 acres.  The contiguous parcel is identified as 0 Denio Ave. Gilroy, CA (APN 835-07-023) and consists of approximately 13 acres of raw land ("Unimproved Property" hereinafter). Collectively the Improved Property and Unimproved Property are referred to as "Properties".  Other than farm equipment valued at about $15,000 and about $737 (plus post-petition rents) now in the WFB DIP, there are no other assets.

The Properties were acquired by Debtor in 2019 from the Richard Vasquez and Robin C. Silvera Vasquez Revocable Trust ("Secured note Holder" hereinafter). Richard Vasquez is Mr. Villareal's uncle.  Secured Note Holder carried back a note in the amount of $1,700,000 at 5% interest. Debtor defaulted.  The parties entered into an Addendum to the Straight Note (Addendum) which was labelled a "Bridge Loan".  It provided for an amount of $1,785,000 payable in 8 quarterly payments of $27,088.86 at an interest rate of 2% per annum. Per the terms of the Addendum, the new loan agreement was to come back into existence on June 15, 2022.  The Addendum provides that "On June 15, 2022 a new loan agreement comes into existence. This loan is to re-establish the Original Note of $1,700,000 and pay back lost interest rate of 5% due to the Bridge Loan. New Loan Agreement between Nathaniel Villarreal Envia Holdings and Richard and Robin C. Silvera Revocable Trust 1,738,870, 5% per annum for 60 quarters. (15 years)" The Addendum is facially ambiguous. A copy of the Note and Addendum is attached as Exhibit I.

The Secured Note Holder was foreclosing; hence the filing of the herein bankruptcy.

---

[1] Per Zillow; Debtor opines that it is larger. Realtor will measure.

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 5 of 42

**B. Insiders of the Debtor**

Nathan Villareal is the only insider of the Debtor.  Mr. Villareal has not received any money from the Debtor.

**C. Management of the Debtor during the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the only officers, directors, managers or other persons in control of the Debtor was Nathan Villareal.

The Manager of the Debtor during the Debtor's chapter 11 case has been Nathan Villareal.

After the Effective Date of the order confirming the Plan, Nathaniel Villareal will continue as sole member and manger of the Debtor.

| Name of Current Officers/Members | Position |
|---|---|
| Nathaniel Villareal | Sole Member |

**D. Events Leading to Chapter 11 Filing**

Seller was foreclosing on the Properties.

**E. Significant Events During the Bankruptcy Case**

Before the filing of the petition, Nathaniel Villareal's parents were residing in the Improved Property without paying any rent.  As of July 1, 2022, Nathan Villareal's parents commenced paying $3,500/month rent. Debtor filed a motion seeking Court authority to use the cash collateral to pay for UST fees, property taxes and insurance.  It provides for rents to accrue until there are sufficient funds in Debtor's WFB Debtor in Possession account to cover these projected expenses. Any surplus is to be distributed to Secured Note Holder.  An order authorizing use of cash collateral was entered on August 22, 2022.

Debtor has employed PHP Group, Inc. as its real estate broker to market and sell the Properties. An order employing PHP Group, Inc. was entered on July 18, 2022. Video and marketing materials have been prepared and marketing has begun.  Debtor's agent opines that the Property can be sold for $3,000,000 but because it is unique it may take some time.  Debtor contends the Properties are worth more. Debtor's agent, at his own marketing expense, hired an

appraiser. The appraiser opined that the value of the Properties is $2,727,000. Debtor has

received one offer for $2,400,000 which was rejected.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 7 of 42

**F. Projected Recovery of Avoidable Transfers**

Check one box.

☒   The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

☐   The Debtor estimates that up to $\boxed{\phantom{xxxxxxxxxx}}$ may be realized from the recovery of fraudulent, preferential or other avoidable transfers. While the results of litigation cannot be predicted with certainty and it is possible that other causes of action may be identified, the following is a summary of the preference, fraudulent conveyance and other avoidance actions filed or expected to be filed in this case:

| Transaction | Defendant | Amount Claimed |
|---|---|---|
|  |  |  |
|  |  |  |

☐   The Debtor has not yet completed its investigation with regard to prepetition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

**G. Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. Disputed claims are treated in Article 5 of the Plan.

The Secured Note Holder has not yet filed its claim.  Unless the claim includes an attachment providing for a payment history and agreeable interpretation of the Addendum, Debtor anticipates filing a claim objection

/ / /

/ / /

### H. Current and Historical Financial Conditions

The Properties have not generated any pre-petition rents. As of July 2022 the

Properties are generating $3,500/month in rent which is being deposited into Debtor's

DIP at Wells Fargo Bank.

The identity and fair market value of the estate's assets are listed in *Exhibit B.*

The Debtor's most recent financial statements issued before bankruptcy, each of which
was filed with the Court, are set forth in *Exhibit C.*

Post-petition Operating Report is set forth in Exhibit D

### III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

#### A. What Is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various

classes and describes the treatment each class will receive. The Plan also states

whether each class of claims or equity interests is impaired or unimpaired. If the Plan is

confirmed, your recovery will be limited to the amount provided by the Plan.

#### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code.

They are not considered impaired, and holders of such claims do not vote on the Plan. They

may, however, object if, in their view, their treatment under the Plan does not comply with that

required by the Code. Therefore, the Plan Proponent has *not* placed the following claims in

any class:

##### 1. Administrative expenses, involuntary gap claims, and quarterly and Court fees

Administrative expenses are costs or expenses of administering the Debtor's

chapter 11 case which are allowed under § 503(b) of the Code. Administrative expenses

include the value of any goods sold to the Debtor in the ordinary course of business and

received within 20 days before the date of the bankruptcy petition, and compensation for

services and reimbursement of expenses awarded by the court under § 330(a) of the Code.

The Code requires that all administrative expenses be paid on the effective date of the Plan,

unless a particular claimant agrees to a different treatment. Involuntary gap claims allowed

under § 502(f) of the Code are entitled to the same treatment as administrative expense

claims. The Code also requires that fees owed under section 1930 of title 28, including

quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

The following chart lists the Debtor's estimated administrative expenses, and quarterly

and court fees, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|------------------------|---------------------|
| Professional Fees, subject to approved by the Court. | $10,000 | Payable from the proceeds of sale of the Improved Property, Unimproved Property or Properties subject to order from the Court. |
| Office of the U.S. Trustee Fees | 325.00 | Paid in full on the effective date of the Plan |
| TOTAL | 10,325.00 | |

### 2. Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (Name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment | |
|------|------|------|------|------|
| FTB | $1,630.78 | 2021 and 2020 | Payment interval: Pay in full on the Effective Date from available cash or if no available cash, by funds gifted by Mr. Villareal to Debtor. | |
| | | | [Monthly] payment | $ |
| | | | Begin date | |
| | | | End date | |
| | | | Interest rate | % |
| | | | Total payout amount | $ |
| | | | Payment interval | |
| | | | [Monthly] payment | $ |
| | | | Begin date | |
| | | | End date | |
| | | | Interest rate | % |
| | | | Total payout amount | $ |

Case: 22-50489   Doc# 34   Filed: 09/06/22   Entered: 09/06/22 17:21:35   Page 10 of 42

**C. Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**1. Classes of secured claims**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy

estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the

Code. If the value of the collateral or setoffs securing the creditor's claim is less than the

amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured

claim.

Here Debtor believes there is more than sufficient equity to pay secured

creditors in full.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|---------------------|------------|-----------|
| 1 | Secured Claim of: Co. of Santa Clara Department of Tax & Collections | No | Impaired | Monthly Payment: $ |
| | Collateral Description: Improved Property at 325 Denio Ave. #B Gilroy, CA (APN 835-07-024) and Unimproved Property at 0 Denio Ave. Gilroy, CA (APN 835-07-023 | | | Payment begins Paid in full on close of escrow from the sale of the Improved Property, Unimproved Property or Properties, but in no event later than 6 months from the Effective Date. Claim shall accrue interest at 18% per annum from the commencement date. If allowed claim is not paid in full within 6 months of the Effective Date, the Class 1 Claimant shall have relief from the automatic stay to proceed with its statutory remedies. |
| | Allowed Secured Amount: $51,290.94 | | | Payments end: |
| | Priority of Lien: Senior to 1st Trust Deed | | | [Balloon Payment] |
| | Principal owed: | | | Interest Rate 18% |
| | Pre-pet/. Arrearage: | | | Treatment of Lien |
| | Total Claim: | | | |

Case: 22-50489   Doc# 34   Filed: 09/08/22   Entered: 09/08/22 17:21:35   Page 11 of 42

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|---------------------|------------|-----------|
| 2 | Secured Claim of: The Richard Vazquez and Robin C. Silvera Vasquez Revocable Trust made on May 30, 2019 | No | Impaired | Monthly Payment: $0 |
| | Collateral Description: Improved Property at 325 Denio Ave. #B Gilroy, CA (APN 835-07-024) and Unimproved Property at 0 Denio Ave. Gilroy, CA (APN 835-07-023) | | | Payment begins Any Allowed Claim to be Paid in full on close of escrow from the sale of the Improved Property, Unimproved Property or Properties, but in no event later than 6 months from the Effective Date. If the Property does not sell within 6 months of the Effective Date, this Secured Creditor shall have relief from the automatic stay to precede with its State Law rights.  Debtor shall directly pay all post-confirmation property taxes and insurance before the delinquent date. |
| | Secured Amount(disputed): $1,750,000 | | | Payments end: |
| | Priority of Lien: Senior to 1st Trust Deed | | | [Ballon Payment] |
| | Principal owed: | | | Interest Rate % |
| | Pre-pet/. Arrearage: | | | Treatment of Lien |
| | Total Claim: | | | [Additional payment required to cure defaults] |

## 2. Classes of priority unsecured claims

The Code requires that, with respect to a class of claims of a kind referred to in §§ 507(a)(1), (4), (5), (6), and (7), each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim, unless a particular claimant agrees to a different treatment or the class agrees to deferred cash payments.

/ / /

Case: 22-50489   Doc# 34   Filed: 09/06/22   Entered: 09/06/22 17:21:35   Page 12 of 42

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (7) of the Code and their proposed treatment under the Plan:

| Class # | Description | | Impairment? | Treatment |
|---|---|---|---|---|
| | Priority unsecured claim pursuant to section [insert] | None | ☐ Impaired ☐ Unimpaired | |
| | Total amount of claim | $ | | |

### 3. Classes of general unsecured claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 3 which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment? | Treatment |
|---|---|---|---|
| 3 | General unsecured class | ☒ Impaired ☐ Unimpaired | [Monthly] payment <br><br> To be paid in full as follows: <br><br> Paid in full together with interest at 3.12% per annum, the latter of the Effective Date or five days after the sale of the Unimproved Property or Improved Property or Properties, provided there are sufficient proceeds of sale, after payment of administrative priority claims, to pay these claims in full; <br><br> or, if the proceeds of sale of the Properties are insufficient to pay these claims in full or if the Properties do not sell within 6 months of the Effective Date, paid in full without interest from the net proceeds of sale after payment of administrative priority claims, with the unpaid balance paid in payments of $3,558.33/mo. commencing on the 1st day of the 6th month after the Effective date. <br><br> Any payments to be distributed pro-rata. |

| | |
|---|---|
| Payments begin | As set forth above |
| Payments end | |
| [Balloon payment] | None |
| Interest rate from Effective Date | % |
| Estimated percent of claim paid | 100% |

Case: 22-50489   Doc# 34   Filed: 09/06/22   Entered: 09/06/22 17:21:35   Page 13 of 42

### 4. Classes of equity interest holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (*LLC*), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class # | Description | Impairment? | Treatment |
|---|---|---|---|
| 4 | Equity interest holders | ☐ Impaired<br>☒ Unimpaired | Retain membership interest |

## D. Means of Implementing the Plan

### 1. Source of payments

Payments and distributions under the Plan will be funded by the following:

Debtor has listed the Properties for sale. Debtor will sell the Improved Property or the Unimproved Property or both (The Properties).  If a buyer only purchases either the Improved Property or the Unimproved Property and the proceeds of sale are sufficient to pay the Plan (Secured and general unsecured creditors) in full, Debtor will retain the remaining property.  If not, Debtor will continue to market the remaining property. However, Debtor's real estate agent opines that most likely a buyer will only buy both the Unimproved and Improved Property (Properties) together.

The possible scenarios and treatment of secured and general unsecured creditors under the plan are as follows:

| Scenario | Treatment of Secured Creditors | Treatment of General Unsecured Creditors |
|---|---|---|
| Unimproved or Improved Property sells within 6 months of the Effective Date and proceeds sufficient to pay administrative claims and general unsecured creditors in full | Pay allowed claims in full from escrow | Pay allowed claims in full the latter of the Effective Date or within 5 days of close of escrow together with interest at 3.12% from the Effective Date. |
| Properties do not sell within 6 months of the Effective Date | Secured Claimants have relief from the automatic stay to enforce their liens | Debtor to commence payments of $3,558.33/mo. on the 1st day of the 6th month after the Effective Date paid pro-rata among allowed claimants continuing until claims are paid in full without interest. |
| Only one of either Improved | Paid in full at | Continue to market unsold property and net |

| | | |
|---|---|---|
| Property or Unimproved Property sells within 6 months of Effective Date and proceeds are sufficient to pay secured claims in full but only part of the general unsecured claims | closing of sale | proceeds of sale (after payment of administrative claims) of sold property distributed pro-rata to allowed claims of general unsecured creditors the later of the Effective Date or 5 days from close of escrow. Deficiency paid from later sale of remaining property. Until remaining property sells in an amount sufficient to pay deficiency in full, in payments of $3,558.33/month distributed pro-rata to allowed claims, paid on the 1st day of the 6th month after the Effective Date and continuing monthly on the 1st day of the month until claims paid in full without interest. |
| Both Properties sell within 6 months of the Effective Date and proceeds are sufficient to pay secured creditors in full, but not general unsecured creditors | Paid in full at closing of sale | Deficiency to general unsecured creditors to be paid in payments of $3,558.33/month distributed pro-rata to allowed claims, paid on the 1st day of the 6th month after the Effective Date and continuing monthly on the 1st day of the month until claims paid in full without interest. |

The monthly payments, if required, are to be generated from any of the following sources:

     a.     Rent of the house until the Improved Property is sold

     b.     Rent of one or both Mobile Homes if the Improved Property is not sold.

     c.     Infusion of money to the Debtor my Nathaniel Villareal, Debtor's sole principal.  Mr.

Villareal is a commercial electrician and is able to fund $3,558.33/month or any difference between

$3,558.33 and the rental income.


**2. Post-confirmation Management**

The Post-Confirmation Management of the Debtor (including officers, directors, managing members, and other persons in control), and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Nathaniel Villareal | Sole Member | Yes | Sole Member | $0 |


**E. Risk Factors**

The proposed Plan has the following risks

    <u>Unique Property</u>.  The Properties are unique and hence there is a smaller pool of buyers than for

a single family residence.  Further, because the Properties, when sold together, exceed 10 acres, it

reduces the lender pool willing to finance the Properties.

    <u>Market Risk</u>.        The real estate market appears to be wavering.  A recession could lengthen

the marketing time or have an adverse impact on price.

**F. Executory Contracts and Unexpired Leases**

There are no leases or executory contracts.

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtor will assume, and if applicable assign, under the Plan. *Assumption* means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion to assume, and if applicable assign, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan

**The deadline for filing a Proof of Claim based on a claim arising from the rejection of a lease or contract is October 3, 2022 (other than for government claimants)**

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

/ / /

/ / /

### G. Tax Consequences of Plan

**Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

Creditors should consult with their tax advisers with respect to the tax consequences of the discharge of any obligation owed to them. The following are the anticipated tax consequences of the Plan:

(1)  Tax consequences to the Debtor of the Plan;

Debtor will have a long term capital gain for the gain, if any computed based on the difference between the net sales price after costs of sale and the basis in the Properties. See footnote to Exhibit E for estimated calculation.

(2)  General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation.

The Plan contemplates that Creditors will be paid in full.  Hence no tax consequences are anticipated.

## IV. Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code. These include the requirements that:

— the Plan must be proposed in good faith;

— if a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders;

— the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

— the Plan must be feasible.

These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that  the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both

(1) allowed or allowed for voting purposes and

(2) impaired.

In this case, the Plan Proponent believes that classes 1-3 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that class 4 is unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the plan.

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 17 of 42

**1. What is an allowed claim or an allowed equity interest?**

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either

(1)   the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or

(2)   the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The non-governmental deadline for filing a proof of claim in this case is Oct. 3, 2022**

**2. What is an impaired claim or impaired equity interest?**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it

/ / /

/ / /

/ / /

/ / /

is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered *impaired* if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is not entitled to vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

**Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan [and to the adequacy of the Disclosure Statement].**

### 4. Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim. No such circumstances are contemplated by the Plan.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless:

(1) all impaired classes have voted to accept the Plan; or

(2) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section B.2. Debtor contends that the Class 2 claimant is an Insider.

### 1. Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur:

(1) the holders of more than ½ of the allowed claims in the class, who vote, cast their votes to accept the Plan, and

(2) the holders of at least ⅔ in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least ⅔ in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a *cram down* plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not *discriminate unfairly*, and

is *fair and equitable* toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a *cram down* confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.**

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as *Exhibit E.*

### D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**1. Ability to initially fund plan**

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as *Exhibit F.*

**2. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.
The Plan Proponent has provided projected financial information. Those projections are listed in *Exhibit G*
The Plan Proponent's financial projections, based on conversations with his Realtor, is that the Properties will sell well before the deadline set forth in the Plan and the proceeds of sale will be sufficient to pay secured and general unsecured creditors in full.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

/ / /

/ / /

/ / /

Case: 22-50489   Doc# 34   Filed: 09/06/22   Entered: 09/06/22 17:21:35   Page 20 of
42

## V. Effect of Confirmation of Plan

**A.    Discharge of Debtor**

Check one box.

☐        **Discharge if the Debtor is an individual and 11 U.S.C. § 1141(d)(3) is not applicable.** Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

☒        **Discharge if the Debtor is a partnership and § 1141(d)(3) of the Code is not applicable.** On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code. However, the Debtor shall not be discharged from any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts imposed by the Plan.

☐        **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt:

(i)        imposed by the Plan, or

(ii)       to the extent provided in 11 U.S.C. § 1141(d)(6).

☐        **No Discharge if § 1141(d)(3) is applicable.** In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

**B. Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if

(1) the Plan has not been substantially consummated and
(2) the Court authorizes the proposed modifications after notice and a hearing.

/ / /

/ / /

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 21 of 42

**C. Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of
Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in
the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the
case. Alternatively, the Court may enter such a final decree on its own motion.

**VI. Other Plan Provisions**

[Insert other provisions here, as necessary and appropriate.]

✖ /s/ Nathaniel Villareal

Nathaniel Villareal

Envia Holdings, LLC c/o Nathaniel Villareal, Member

✖ /s/ Lars T. Fuller

Lars T. Fuller

Lars T. Fuller, Attorney for Debtor

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 22 of
42

# Exhibits

**Exhibit A:  Copy of Proposed Plan of Reorganization**

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 23 of
42

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor Name  Envia Holdings, LLC

United States Bankruptcy Court for the: Northern District of California

Case number:   22-50489-MEH

❑  Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11  02/20

Envia Holdings, LLC's  Plan of Reorganization, Dated Sept. 7, 2022

## Article 1: Summary

This Plan of Reorganization (the "*Plan*") under chapter 11 of the Bankruptcy Code (the "*Code*") proposes to pay creditors of Envia Holdings, LLC (the "*Debtor*") from the sale of estate Improved Property at 325 Denio Ave. #B Gilroy, CA (APN 835-07-024) and Unimproved Property at 0 Denio Ave. Gilroy, CA (APN 835-07-023) [Collectively referred to as "Properties"] or if the proceeds of sale are insufficient to pay creditors in full, from payments over time emanating from Mr. Villareal, Debtor's sole member.

This Plan provides for:

| | |
|---|---|
| x | classes of priority claims & administrative claims; |
| 2 | classes of secured claims; |
| 1 | class of non-priority unsecured claims; and |
| 1 | class of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately  100% on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01   **Class 1** .................................   The claim of  Santa Clara Department of Tax & Collections for property taxes to the extent allowed as a secured claim under § 506 of the Code.

2.02   **Class 2** ...................................   The claim of The Richard Vazquez and Robin C. Silvera Vasquez Revocable Trust made on May 30, 2019 to the extent allowed as a secured claim under  § 506 of the Code

2.03   **Class 3** ...................................   All non-priority unsecured claims allowed under § 502 of the Code.

2.04  **Class 4** .................................  Equity interests of the Debtor.

| **Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees** |
|---|

3.01  **Unclassified claims**  Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02  **Administrative expense claims**  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full from the sale of the Improved Property or Unimproved Property or Properties subject to prior order of the Court.

3.03  **Priority tax claims**  Each holder of a priority tax claim will be paid. The claim of the FTB in the amount of $1,630.78 will be paid in full on the Effective Date.

3.04  **Statutory fees**  All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05  **Prospective quarterly fees**  All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

| **Article 4: Treatment of Claims and Interests Under the Plan** |
|---|

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Santa Clara Department of Tax & Collections | Impaired | Paid in full on close of escrow for the sale of the improved Property, Unimproved Property or Properties, but in no event later than 6 months from the Effective Date. Claim shall accrue interest at 18% per annum from the commencement date.<br><br>If allowed claim is not paid in full within 6 months of the Effective Date, the Class 1 Claimant shall have relief from the automatic stay to proceed with its statutory remedies |
| Class 2 – Secured Claim of The Richard Vazquez and Robin C. Silvera Vasquez Revocable Trust made on May 30, 2019 | Impaired | Any Allowed Claim to be Paid in full on close of escrow from the sale of the improved Property, Unimproved Property or Properties, but in no event later than 6 months from the Effective Date. If the Property does not sell within 6 months of the Effective Date, this Secured Creditor shall have relief from the automatic stay to proceed with its State Law rights.<br><br>Debtor shall directly pay all post-confirmation property taxes and insurance before the delinquent date. |

| Class 3 – General Unsecured Creditors | Impaired | To be paid in full as follows:<br><br>Paid in full together with interest at 3.12% per annum, the latter of the Effective Date or five days after the sale of the Unimproved Property or Improved Property or Properties, provided there are sufficient proceeds of sale, after payment of administrative priority claims, to pay these claims in full;<br><br>or, if the proceeds of sale of the Properties are insufficient to pay these claims in full or if the Properties do not sell within 6 months of the Effective Date, paid in full without interest from the net proceeds of sale after payment of administrative priority claims, with the unpaid balance paid in payments of $3,558.33/mo. commencing on the 1st day of the 6th month after the Effective Date. All payments shall be paid pro-rata as to allowed claims. |
|---|---|---|
| Class 4 – Equity Security Holder | Impaired | Shall retain all membership interest in the Debtor. |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:<br><br>(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
|---|---|---|
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a)  The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br><br>There are no executory contracts or unexpired leases. |
|---|---|---|
|  |  | (b)  Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. |

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ninety (90) days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

Generally, The Plan will be funded from the sale of the Improved Property, Unimproved Property or Properties within 6 months of the Effective Date or in the unlikely event the proceeds of sale are insufficient to pay all allowed claims in full together with interest as set forth in the Plan, from payments over time.

More specifically, the Plan will be funded according to the Scenarios set forth in the table below:

| Scenario | Treatment of Secured Creditors | Treatment of General Unsecured Creditors |
|---|---|---|
| Unimproved or Improved Property sells within 6 months of the Effective Date and proceeds sufficient to pay administrative claims and general unsecured creditors in full | Pay allowed claims in full from escrow | Pay allowed claims in full the later of the Effective Date or within 5 days of close of escrow together with interest at 3.12% from the Effective Date. |
| Properties do not sell within 6 months of the Effective Date | Secured Claimants have relief from the automatic stay to enforce their liens | Debtor to commence payments of $3,558.33/mo. on the 1st day of the 6th month after the Effective Date paid pro-rata among allowed claimants continuing until claims are paid in full without interest. |
| Only one of either Improved Property or Unimproved Property sells within 6 months of Effective Date and proceeds are sufficient to pay secured claims in full but only part of the general unsecured claims | Paid in full at closing of sale | Continue to market unsold property and net proceeds of sale (after payment of administrative claims) of sold property distributed pro-rata to allowed claims of general unsecured creditors the later of the Effective Date or 5 days after close or escrow. Deficiency paid from later sale of remaining property. Until remaining property sells in an amount sufficient to pay deficiency in full, in payments of $3,558.33/month distributed pro-rata to allowed claims, paid on the 1st day of the 6th month after the Effective Date and continuing monthly on the 1st day of the month until claims paid in full, without interest |
| Both Properties sell within 6 months of the Effective Date and proceeds are sufficient to pay secured creditors in full, but not general unsecured creditors | Paid in full at closing of sale | Deficiency to general unsecured creditors to be paid in payments of $3,558.33/month distributed pro-rata to allowed claims, paid on the 1st day of the 6th month after the Effective Date and continuing monthly on the 1st day of the month until claims paid in full without interest. |

Case: 22-50489   Doc# 34   Filed: 09/08/22   Entered: 09/08/22 17:21:35   Page 28 of 42

## Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate governance** | Not Applicable |
| 8.08 | **Retention of Jurisdiction** | The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether The Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan. |

## Article 9: Discharge

On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

**Article 10: Other Provisions**

None.

Respectfully submitted,

✘ /s/ Nathaniel Villareal                    Nathaniel Villareal

[Signature of the Plan Proponent]         Envia Holdings, LLC c/o Nathaniel Villareal

✘ /s/ Lars T. Fuller                         Lars T. Fuller

[Signature of the Attorney for the Plan Proponent]    Lars T. Fuller, Attorney for Debtor

**Exhibit B: Identity and Value of Material Assets of Debtor**

| Assets | Basis of Valuation | Value |
|---|---|---|
| a. Cash on hand | | 737 |
| b. Farm Tractor | Debtor opinion | 15,000 |
| c. Farm Truck | Debtor opinion | 7,500 |
| d. Real Properties | Broker opinion | 3,000,000[2] |
| (325 Denio Ave. #B Gilroy and 0 Denio Ave. Gilroy, CA) | | |
| | | |
| Total Assets | | $3,023,237 |

---

[2] Represents broker opinion of value and list price. Debtor opines value is higher. An appraisal was ordered and Properties appraised for $2,727,000.

**Exhibit C: Prepetition Financial Statements**

See attached.

# EXHIBIT C

ENVIA HOLDINGS, LLC

Balance Sheet as of May 31, 2022

ASSETS

Cash (WFB)                        737.00

Long Terms Assets

     Real Property:            3,000,000

Tractor and Farm Equipment      40,000

TOTAL                                        3,040,737

LIABILITIES

Secured Debt                   1,750,000

Unsecured                        427,000

TOTAL LIABILITIES                        <u>2,177,000</u>

MEMBER EQUITY                              863,737

ENVIA HOLDINGS, LLC

(Cash Flow Statement and Statement of Operations for May 2022)

| | |
|---|---|
| Income | 0.00 |
| Expenses | 0.00 |
| Net Profit | 0.00 |

**Exhibit D: [Most Recently Filed Postpetition Operating Report]**
**[Summary of Postpetition Operating Reports]**

Debtor has not filed its MORs.

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 36 of
42

**Exhibit E: Liquidation Analysis**

**Plan Proponent's Estimated Liquidation Value of Assets**

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $737 |
| b. | Accounts receivable | $0 |
| c. | Inventory | $0 |
| d. | Office furniture and equipment | $0 |
| e. | Machinery and equipment – Farm Tractor | $15000 |
| f. | Automobiles – Farm Truck | $ 7500 |
| g. | Building and land - 325 Denio Ave. #B Gilroy and 0 Denio Ave. Gilroy, CA | $3,000,000 |
| h. | Customer list | $0 |
| i. | Investment property  (such as stocks, bonds or other financial assets) | $0 |
| j. | Lawsuits or other claims against third-parties | $0 |
| K | Other intangibles (such as avoiding powers actions) | $0 |

| **Total Assets at Liquidation Value** | | **$3,023,237** |
|---|---|---|
| Less: | Cost of Sale of Real Property (6% including escrow) | – $180,000 |
| Less: | Property Taxes | – $51,291 |
| Less: | Secured creditors' recoveries - 1st Trust Deed (Disputed) | – $1,750,000 |
| Less: | Chapter 7 trustee fees and expenses | – $113,947 |
| Less: | Chapter 11 administrative expenses | – $10,000 |
| Less: | Priority claims, excluding administrative expense claims | – $1630 |
| Less: | Estimated tax consequences of sale | – $180,000[3] |

| (1) | Balance for unsecured claims | $ 736,369 |
|---|---|---|
| (2) | Total dollar amount of unsecured claims | $ 427,644 |

| **Percentage of claims which unsecured creditors would receive or retain in a chapter 7 liquidation** | **100%** |
|---|---|
| **Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:** | **100%** |

---

[3] Calculated as $3,000,000 (sale of real property) – $180,000 (commissions and closing) – $2,100,000 (basis) = $720,000;  Capital gain Fed 15% and state 10% = 180,000.  This excludes depreciation recapture.

Case: 22-50489    Doc# 34    Filed: 09/08/22    Entered: 09/08/22 17:21:35    Page 37 of 42

**Exhibit F: Cash on hand on the effective date of the Plan**

| **Cash on hand on effective date of plan** | $3,175 |
|---|---|
| Less:   Amount of administrative expenses payable on effective date of the Plan | –   $0 |
| Less:   Amount of statutory costs and charges | –   $0 |
| Less:   Amount of cure payments for executory contracts | –   $0 |
| Less:   Other Plan payments due on effective date of the Plan – FTB Claim | –   $1,630.78 |
| **Balance after paying these amounts** | $1,544.22 |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| Cash in Debtor's bank account now | $6,675 |
| Net earnings between now and effective date of the Plan [Rent] | $14,000 |
| Borrowing | $0 |
| Capital contributions | $0 |
| Payment of authorized expenses (UST fees, property taxes, Vazquez) | -  $ 17,500 |
| **Total**  Effective Day Feasibility | $3,175 |

Case: 22-50489    Doc# 34    Filed: 09/06/22    Entered: 09/06/22 17:21:35    Page 38 of
42

**Exhibit G: Projections of Cash Flow for Post-Confirmation Period and Earnings to Demonstrate Feasibility**

The plan will be funded from the sale of Debtor's Improved Property, Unimproved Property or both. Debtor's Realtor projects a sale price of $3,000,000, an amount sufficient to pay secured creditors and unsecured creditors in full, together with interest.

Only if the Properties do not timely sell for an amount sufficient to pay general unsecured creditors, or only the Improved Property or Unimproved Property sells, will payments be required. These will come from rental income of the house (if the Improved Property has not sold), rental income from the mobile homes (if the Improved Property has not sold) or from Mr. Villareal, individually.

### Exhibit H: List of General Unsecured Creditors

| | |
|---|---|
| Franchise Tax Board | 144 |
| Barry and Laura Goldine | 402,000 |
| Madelina Arceniega | 25,000 |
| IRS | 500 |
| Total | 427,644 |

### Exhibit I - Note and Addendum

 See attached.

Case: 22-50489    Doc# 34    Filed: 09/06/22    Entered: 09/06/22 17:21:35    Page 39 of 42

# EXHIBIT I

## STRAIGHT NOTE

**Escrow No.:**

### DO NOT DESTROY THIS ORIGINAL NOTE
*When paid, this original Note, together with the Deed of Trust securing it, must be surrendered to Trustee for cancelation, before reconveyance will be made.*

$1,700,000.00                    Cupertino, California                    May 30, 2019

On or before, July 1, 2024, for value received, I/we promise to pay to

**The Richard Vasquez and Robin G. Silvera Vasquez Revocable Trust**

or order, at as directed by the beneficiary, the sum of One Million Seven Hundred Thousand And No/100 Dollars ($1,700,000.00), with interest from _____ at the rate of Five Percent (5.000%) per annum, payable Yearly, in the sum of Three Hundred Ninety-Two Thousand Six Hundred Fifty-Seven And 16/100 Dollars ($392,657.16), beginning on August 1, 2019 and so continuing "Yearly" until July 1, 2024 at which time the entire unpaid principal balance, together with accrued interest, shall become immediately due and payable.

**LATE CHARGE:** Any payment that is received at least ten (10) days past due shall incur a late fee in the amount equal to Fifteen Percent (15.000%) of the late payment.

**PREPAYMENT OF PRINCIPAL WITHOUT PENALTY:** Payor shall have the privilege to prepay this note in full, or in part, at anytime without penalty. Payment(s) shall first apply to interest then due and the balance to principal. Interest shall cease to accrue on any principal paid as of date of payment thereof. Interest only payments, if applicable, shall thereafter adjust accordingly.

Principal and interest payable in lawful money of the United States of America. Should default be made in payment of principal or interest when due the whole sum of principal and interest shall become immediately due at the option of the holder of this Note and after said breach, said obligation shall continue to accrue interest at the rate of Five Percent (5.000%) per annum. If action be instituted on this Note, the undersigned promises to pay such sum as the Court may fix as attorney's fees. This Note is secured by a Deed of Trust of even date to Chicago Title Company, a California corporation, as Trustee.

Envie Holdings, a California Limited Liability Company

BY: _____
Nathaniel Villarreal
Managing Member

Case: 22-50489   Doc# 34   Filed: 09/08/22   Entered: 09/08/22 17:21:35   Page 41 of 42

## Addendum to Straight Note
### Escrow No. FWPS-2984190399-CS

Envia Holdings, A California Limited Liability Company by Nathaniel Villarreal (Managing Member) has been and is unable to comply with the payment agreement in the Original Note.  The Richard Vasquez and Robin C. Silvera Vasquez Revocable Trust is and has agreed to a." Bridge Loan at 2% for two years , 8 payments payable in quarters,  First payment is due June 15th, 2020  for the amount of $27,088.86.

Terms of Bridge Loan-  1,785,000.00  8 payments Quarterly 2 % per annum.  Quarterly Payment is $27,088.86  due June 15th 2020.  If any payment is not received by the Vasquez Trust account within 10 days of due date a 10% late fee is due and payable.  Funds may be paid by check  and mailed to Vasquez Trust  206 Farm Road 3105, Pickton Texas 75471  or wired into Wells Fargo Bank  account #

Prepayment of Principal without Penalty:  Payor  shall have the privilege to prepay this note in full, or in part, at anytime without penalty as in accordance with original note.

Original note other than annual payments are still in effect.  This note is secured by a Deed of Trust. If action be instituted on this Note,  the undersigned  Nathaniel Villarreal  Envia Holdings promises to pay such sum as the court may fix as attorney's fees.  Nathaniel Villarreal, Eniva Holdings will keep all insurance and taxes paid and current or all contracts on this property between Vasquez Trust and Nathaniel Villarreal, Envia Holdings will be in default.

**On June 15, 2022  a new loan agreement comes into existence.   This loan is to re-establish the Original Note  of $1,700,000.00   and pay back the lost interest rate of 5%  due to the "Bridge Loan.**

New Loan  Agreement  Between  Nathanial Villarreal  Envia Holdings  and Richard and Robin C Silvera Revocable Trust   $1,738,870.20,  5 % per annum  for 60 quarters. ( 15 years)

New Loan payments  are $ 41,118.55  beginning June 15th 2022  and every quarter thereafter for 60 payments ( 15 years)   If any payment is not received into the account of the Vasquez Trust 10 days after the due date a 10% late fee  of ( $4111.86) penalty is due and payable.

Nathanial Villarreal
Envia Holdings Managing Partner
4/9/2020

Vasquez Trust, R Vasquez TTEE

4/9/2020