LARS T. FULLER (No. 141270)
JOYCE K. LAU (No. 267839)
THE FULLER LAW FIRM, PC
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852

Attorneys for Debtor Envia Holdings, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ENVIA HOLDINGS, LLC<br><br>Debtor | CASE NO.: 22-50489-MEH<br><br>**CONFIRMATION BRIEF**<br><br>CHAPTER 11 (Subchapter V)<br><br>Date:   Dec. 8, 2022<br>Time:   10:00 AM<br>Court:  Telephone or Video Only***<br>Judge:  Hon. Elaine Hammond |

Debtor Envia Holdings, LLC hereby submits this brief in support of confirmation of the Envia Holdings, LLC's *Plan of Reorganization dated Sept. 7, 2022* (the "Plan") in the above-captioned matter. This brief is based upon the supporting memorandum of points and authorities set forth below.

I. **Relevant Facts**

  A. **Background Facts**

Debtor filed the herein case on June 2, 2022. At the time of the filing of the petition, assets consisted of real properties at 0 Denio Ave. Gilroy, CA ("Unimproved Property") and 325 Denio

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

Ave. #B Gilroy, CA (APN 835-07-023 and 835-07-024) including two mobile homes affixed thereto (Improved Property) [collectively "Properties" hereinafter].

Debtor is proposing a Plan that will sell the Improved Property or Unimproved Property or both to pay secured creditors in full. Unsecured creditors will also be paid in full from the proceeds of sale or, in the unlikely event the proceeds of sale are insufficient, general unsecured creditors will still be paid in full, but from cash infusions from Mr. Villareal, Debtor's principal.

### B. Significant Events in the Bankruptcy Case

| | |
|---|---|
| June 2, 2022 | Debtor filed petition for relief |
| June 15, 2022 | Application to Employ The Fuller Law Firm, P.C. filed; |
| July 13, 2022 | Application to Employ PHP Group, Inc. filed; |
| July 18, 2022 | Order Employing PHP Group, Inc. entered; |
| July 19, 2022 | Motion for Use of Cash Collateral filed; |
| July 20, 2022 | Disclosure Statement filed; |
| July 21, 2022 | Order Employing The Fuller Law Firm, P.C. entered; |
| Aug. 22, 2022 | Order Authorizing Use of Cash Collateral entered; |
| Sept. 8, 2022 | Disclosure statement filed; |
| Oct. 13, 2022 | Order Tentatively Approving Disclosure Statement entered; |
| Oct. 26, 2022 | Notice of Confirmation Hearing filed; |

### C. Funding for Plan

It is anticipated that the Plan will fund from the sale of the Unimproved Property, Improved Property or both ("Properties"). Because the Properties are unique, Debtor's real estate agent, at his own expense, ordered an appraisal from David D. Dietrich, SRA. The Properties appraised at $2,727,000 as of August 12, 2022. The Property is listed for $3,000,000. There was a "low ball" offer for $2,425,000 which was rejected.

The Plan provides for the allowed claims of the Class 1 and 2 creditors to be paid in full.

As to the Class 1 creditor (property taxes) in the amount of $51,290.94, the plan provides that the claim be paid in full on close of escrow from the sale of the Improve Property or Unimproved Property or Properties within 6 months of the Effective date together with in interest at 18% per annum from the commencement date. If not paid, it has relief from stay.

As to the secured claim of Class 2 creditor Richard Vasquez and Robin C. Silvera Revocable Trust the plan provides for that the claim be paid in full on close of escrow from the sale of the Improve Property or Unimproved Property or Properties within 6 months of the Effective date.

The Plan provides for general unsecured creditors to be paid in full together with interest at 3.12% per annum, the latter of the Effective Date or five days after the sale of the Unimproved Property or Improved Property or Properties, provided there are sufficient proceeds of sale after payment of administrative claims. Or if the proceeds of sale are insufficient, or the Properties do not sell within 6 months of the Effective Date, paid in full without interest from the net proceeds of sale after payment of administrative priority claims, with the unpaid balance paid in payments of $3,558.33/month commencing on the 1st day of the 6th month after the Effective date.

Finally, Nate Villareal, Debtor's sole member shall retain his equity interest in the Debtor.

Nate Villareal is an electrician and has the funds to fund any necessary payments to general unsecured creditors. His proprietorship has revenue of about $20,000/month which nets about $11,000/month in net income.

## II. Ballots

This will *not* be a unanimous Plan. Votes were as follows:

**Impaired (By number)**

| CLASS | IMPAIRMENT | TOTAL ACCEPT | TOTAL REJECT | % ACCEPT |
|---|---|---|---|---|
| 1 – Santa Clara Department of Tax and Fee Administration | Impaired | 0 | 0 | 0 |
| 2 – Richard Vasquez and Robin C. Silvera | Impaired | 0 | 0 | 0 |

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

| | | | | |
|---|---|---|---|---|
| Vasquez Revocable Trust | | | | |
| 3 - General Unsecured Claims | Impaired | 2 | 0 | 100% |
| 4 – Equity Interest of Debtor | Unimpaired | 0 | 0 | 0 |

**By Amount**

The final tabulation (in dollars) for impaired classes is as follows:

**Class 3: General Unsecured Creditors**

```
Number of Creditors voting in Class 3:        2
Amount of Claims in Class 3 Voting:     $427,000
Total acceptances                             2
Total Rejections                              0
Percentage of amount of claims accepting   100%
```

### III. Objection to Confirmation

No Objection to confirmation has been filed

### IV. Statutory Requirements for Confirmation of the Plan

**A.    11 U.S.C. § 1129(a)(1)**

Section 1129(a)(1) requires that "[t]he plan complies with the applicable provisions of this title. 11 U.S.C. § 1129(a)(1). "[T]he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans." Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 648-49 (2nd Cir. 1988). "In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to classification of claims and the contents of a plan of reorganization." In re Texaco Inc., 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988). As discussed in detail below, the Plan satisfies the requirements of both sections 1122 and 1123.

### i. 11 U.S.C. § 1122

A plan proponent has broad discretion to adopt classification schemes in a plan of reorganization. See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs., 987 F.2d 154 (3rd Cir. 1993); Hanson v. First Bank, 828 F.2d 1310, 1313 (8th Cir. 1987); In re Jersey City Medical Ctr., 817 F.2d 1055, 1060-61 (3rd Cir. 1987) (chapter 9 case applying 11 U.S.C. § 1122); Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.), 800 F.2d 581, 584-86 (6th Cir. 1986). As the Eleventh Circuit has explained, a "proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case." Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.), 913 F.2d 873, 880 (11th Cir. 1990).

Further, the only restriction in the Bankruptcy Code on the creation of classes is section 1122(a), which provides that a plan may place a claim or an interest in a particular class only if the claim or interest is "substantially similar" to other claims or interest in the class. See 11 U.S.C. § 1122(a). The only other limitation on classification is a prohibition against separately classifying certain claims solely to satisfy the requirement of section 1129(a)(10) that at least one impaired class of claims votes to accept the plan. See Steelcase, Inc. v. Johnston (In re Johnston), 140 B.R. 526, 529 (B.A.P. 9th Cir. 1992) aff'd 21 F.3d 323 (9th Cir. 1994) (because the "record [did] not establish that the separate classification of [the objector's] claim was proposed to secure the vote of an impaired class of claims," the court upheld the plan's classification scheme); see also U.S. Truck, 800 F.2d at 586.

Here, the classification of claims in the Plan is very simple and not for the purpose of manipulating the outcome of the creditors' votes or for any other inappropriate purpose. All secured claims are placed in separate classes, and all general unsecured claims are placed in one class.

Each of the classes established under the Plan are wholly consistent with the principles that govern section 1122, were established based on claims that are "substantially similar" to other claims within the respective class, and were not established for an improper purpose.

**B.     1123(a)**

<u>First</u>, section 1123(a)(1) requires that a plan designate classes of claims, other than claims of a kind specified in section 507(a) (administrative expense claims), section 507(a)(2) (involuntary "gap" period claims), section 507(a)(7) (tax claims), and classes of interests.  <u>See</u> <u>In re Haardt</u>, 65 B.R. 697, 700 (Bankr. E.D. Pa. 1986).  Article 2 and Article 3 of the Plan designates classes of claims and of interests in accordance with § 1123(a)(1).  Article 3 and 4 describes how all claims are provided for by the Plan, including administrative claims, although such claims are not classified.  As such, the Plan satisfies the requirements of section 1123(a)(1).

<u>Second</u>, section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2).

Under section 1124, a class of claims is impaired unless each claim in that class is treated in one of the following ways: (1) the plan leaves unaltered the legal, equitable and contractual rights to which the holder of such claim is entitled; (2) the plan cures any default, reinstates the maturity, compensates the holder for damages and does not otherwise alter the legal, equitable or contractual rights to which such claim entitles the holder; or (3) on the effective date of the plan, the holder of such claim receives on account of such claim, cash equal to the allowed amount of the claim.  <u>See</u> 11 U.S.C. § 1124.

Here, there are no classes of claims that are not impaired under the Plan except for Nate Villareal's equity interest in the Debtor.

<u>Third</u>, section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan."  11 U.S.C. § 1123(a)(3).  Whether a claim or interest is "impaired" is determined pursuant to section 1124.  <u>See</u> <u>In re Mid Pacific Airlines, Inc.</u>, 110 B.R. 489, 491 (Bankr. Haw. 1990).  Generally, a class of claims or interests is impaired unless it is treated in accordance with one of the two criteria specified in section 1124.

Here, there are two classes of secured claims (Class 1 and Class 2) that are impaired under the Plan, and one class of unsecured claims (Class 3) that is impaired under the Plan, and the treatment for these claims are specified in the section corresponding to identification to such

claim.

Fourth, section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." See In re Monroe Well Service, Inc., 80 B.R. 324, 336 (Bankr. E.D. Pa. 1987) (equality of treatment provision of § 1123(a)(4) only applies to claims placed in the same class). The Plan provides the same treatment for each Claim and each Interest contained in each of the Classes under the Plan in compliance with section 1123(a)(4). Here only Class 3 has more than one claimant and all are treated equally.

Fifth, section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation," and sets forth several examples of such adequate means. See In re Stuart Glass & Mirror, Inc., 71 B.R. 332, 334 (Bankr. S.D. Fla. 1987) (plan must provide adequate means for its execution). In accordance with section 1123(a)(5), means for implementing the Plan are set forth in Article 8 of the Plan. Summarily the Plan will likely fund from the sale of the Unimproved Property, the Improved Property or the Properties. These means are adequate to enable the Reorganized Debtor to implement the Plan in compliance with section 1123(a)(5).

### C.     11 U.S.C. § 1123(b)

First, section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." As discussed above, all classes except Insider Class 4 (Mr. Mr. Villareal's equity interest) is scheduled as impaired.

Second, sections 365 and 1123(b)(2) permits a plan to provide for the assumption or rejection of any executory contract and unexpired lease not previously rejected. See 11 U.S.C. § 1123(b)(2). Further, Federal Rule of Bankruptcy Rule 6006(a) provides that the assumption or rejection or an executory contract or unexpired lease as a part of a plan is not governed by Bankruptcy Rule 9014. As such, there are no requirements for a separate motion, notice, or hearing. Here Mr. Vaillareal's parents resided in the house pursuant to oral agreement. Debtor's position is that there is no executory contract to assume or reject. However, the Plan provides for a

default of rejecting all executory contracts.

Third, section 1123(b)(3)(B) provides that a plan may provide for "the retention and enforcement by the Debtor… of any… claim…". 11 U.S.C. § 1123(b)(3)(B). Here the Class 2 claimant is disputed and Debtor will need to determine whether the filed claim should be allowed or an Objection to Claim filed.

### D. 11 U.S.C. § 1129(a)(2)

Section 1129(a)(2) requires that the proponent of the plan comply with "the applicable provisions" of title 11. See 11 U.S.C. § 1129(a)(2). In this context, the "applicable provisions" of title 11 are section 1121 (who may file a plan), section 1125 (solicitation of acceptances of a plan), and section 1127 (modification of a plan). See In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

Sections 1121(a) and (c) permit a Debtor to file a plan of reorganization, and section 1121(c) allows for a creditor to file a plan of reorganization under certain circumstances. See 11 U.S.C. § 1121. Here, only the Debtor filed a Plan.

One of the principal purposes of section 1129(a)(2) is to ensure that proponents have complied with the requirements of section 1125 in the solicitation of acceptances of a plan of reorganization. See In re Jeppson, 66 B.R. 269, 296 97 (Bankr. Utah 1986); In re Toy & Sports Warehouse, Inc., 37 B.R. at 149 ("the Proponent must comply with the ban on post-petition solicitation of the plan unaccompanied by a written disclosure statement approved by the court in accordance with §§ 1125 and 1126."). Here, Debtor did not solicit acceptance of the Plan until after such time that this Court approved the disclosure statement set forth in the Plan.

### E. 11 U.S.C. § 1129(a)(3)

Section 1129(a)(3) requires that the plan was "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

Although the term "good faith" is left undefined by the Bankruptcy Code, "[i]n the context of a chapter 11 reorganization . . . a plan is considered proposed in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed

8
Confirmation Brief
Case: 22-50489   Doc# 46   Filed: 12/06/22   Entered: 12/06/22 17:35:57   Page 8 of 13

under the Code.'" Hanson v. First Bank of South Dakota, 828 F.2d 1310, 1315 (8th Cir. 1987) (*quoting* In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)) ("[a] plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code"); see also In re Corey, 892 F.2d 829, 835 (9th Cir. 1989); In re Stolrow's Inc, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) ("[g]ood faith requires that a plan will achieve a result consistent with the objectives and purposes of the Code.")

Further, courts have generally held that the "good faith" requirement should be considered in light of the totality of circumstances. See In re Sylmar Plaza, L.P., 314 F.3d 1070, 1074 (9th Cir. 2002) ("[t]he requisite good faith determination is based on the totality of the circumstances").

Here, the Bankruptcy case was filed to stay the sale of the Properties, a purpose contemplated by the Code.

As such, the Plan complies with the requirements of section 1129(a)(3).

### F. 11 U.S.C. § 1129(a)(4)

Section 1129(a)(4) provides "[a]ny payment made or to be made by the proponent, by the Debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) is directed primarily at policing the award and payment of professional fees from the estates in Chapter 11 cases. See 7 COLLIER ON BANKRUPTCY ¶ 1129.02 (15th ed. 2015) ("[s]ection 1129(a)(4) requires that the bankruptcy court exercise substantive control over fees and costs related to confirmation and the chapter 11 case").

Here, Article IIIB1 of the Plan provides for payment of all administrative claims See In re Future Energy Corp., 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("[c]ourt approval of payments for services and expenses is governed by various Code provisions e.g., §§ 328, 329, 330, 331, and 503(b) and need not be explicitly provided for in a Chapter 11 plan"); In re Elsinore Shore Assocs., 91 B.R. 238, 268 (Bankr. N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied where plan provided for payment of only "allowed" administrative expenses).

9
Confirmation Brief

### G. 11 U.S.C. § 1129(a)(5)

Section 1129(a)(5) provides that (i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

Here Article IIID2 provides that Mr. Villareal shall not receive any salary.

### H. 11 U.S.C. § 1129(a)(6)

This section relates to governmental regulatory commission with jurisdiction, after confirmation of the plan and is not applicable to this case.

### I. 11 U.S.C. § 1129(a)(7)

Section 1129(a)(7) sets forth the "best interest of creditors" test, which in relevant part requires that "each holder of a claim or interest of such class—(i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7).

Debtor has proposed a 100% plan. The allowed claims of all secured creditors are fully secured. General unsecured creditors will receive interest on their allowed claims.

### J. 11 U.S.C. § 1129(a)(8)

Section 1129(a)(8) requires that each class of claims and interests either has accepted the Plan or is not impaired under the Plan. See 11 U.S.C. § 1129(a)(8). Here, as set forth above, Class 1 and Class 2 did not vote. Class 3 is the only class that voted, is impaired and voted in favor of the plan. Because Class 1 and Class 2 did not vote on the Plan, these classes are deemed

not to affirmatively accept the Plan, and the Plan Proponents must satisfy the requirement of section 1129(b) to confirm the Plan.

Section 1129(b)(1) provides that "if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).

Further, pursuant to section 1129(b)(2)(A)(i), with respect to secured claims that have not accepted the Plan, the Plan must provide: (i) the creditor must retain its lien to the extent of its allowed claim; and (ii) the creditor must receive deferred cash payments totaling the allowed amount of its claim, of a value, as of the effective date of the plan. See 11 U.S.C. § 1129(b)(2)(A)(i).

In the Plan, the Class 1 and Class 2 creditors will retain their lien and be paid in full from the sale of the Unimproved Property, Improved Property or Properties.

As such, notwithstanding that Class 1 and Class 2 did not vote and are deemed to reject the Plan, pursuant to section 1129(a)(1), this Court has authority to find that the proposed treatment of the Class 1 and Class 2 claim is fair and equitable and satisfies the requirements of section 1129(b)(2)(A)(i).

**K.     11 U.S.C. § 1129(a)(9)**

Section 1129(a)(9) contains provisions generally requiring immediate payment in cash of administrative and non-tax priority claims and permitting the deferred payment of priority tax claims over a period not exceeding five years. See 11 U.S.C. § 1129(a)(9).

Here, the administrative fees of The Fuller Law Firm, P.C. are to be paid from the sale of the Improved Property, Unimproved Property or Properties.

The FTB filed a priority claim of $1,630.78. The Plan provides for it to be paid in full from available cash or if no cash is available, by funds gifted by Mr. Villareal to the Debtor. Debtor has sufficient funds. The IRS filed a $500.00 *non-priority* claim.

### L. 11 U.S.C. § 1129(a)(10)

Section 1129(a)(10) requires that at least one class of impaired claims has accepted the Plan, determined without including any acceptance of the Plan by an insider holding a claim in such class. See 11 U.S.C. § 1129(a)(10); see also In re Toy & Sports Warehouse, Inc., 37 B.R. at 151.

As set forth above, Class 3 has *unanimously* and affirmatively voted to accept the Plan, which satisfies the requirements of section 1129(a)(10).

### M. 11 U.S.C. § 1129(a)(11)

Section 1129(a)(11) sets forth the feasibility requirements, which provides that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

Here, the appraised value is sufficient to pay all creditors in full. If Debtor is unable to perform, the Plan provides for relief from stay.

### N. 11 U.S.C. § 1129(a)(12)

Section 1129(a)(12) requires that a plan provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of the quarterly fee to the United States Trustee) be paid on the effective date of the plan. See 11 U.S.C. § 1129(a)(12). Debtor represents that payment of fees to the United States Trustee are current.

### O. 11 U.S.C. § 1129(a)(13)

Section 1129(a)(13) relates to retiree benefits and is not applicable to the instant case because Debtor has no retirement benefits.

### P. 11 U.S.C. § 1129(a)(14)

Section 1129(a)(14) relates to domestic support obligations and is not applicable here.

**Q.     11 U.S.C. § 1129(a)(15)**

Section 1129(a)(15) relates to cases where Debtor is an individual and the holder of an allowed unsecured claim objects to confirmation. Here, Debtor is not an individual and no objections have been filed.

**V.     EFFECTIVE DAY FEASIBILITY**

Here, Debtor's latest MOR reflects that Debtor had $11,715 of cash in the bank . Debtor represents that the current balance is slightly more than this amount. Debtor requires the following cash

```
FTB         $1,630.78
UST Fees    $  250.00
```
There is more than sufficient cash on hand.

**VI.    CONCLUSION**

Based on the foregoing, Debtor respectfully requests that the Court enter an order confirming the Plan.

DATED: Dec. 6, 2022                                    **THE FULLER LAW FIRM, P.C.**

/s/ *Lars T. Fuller* ____
LARS T. FULLER, ESQ.
Attorney for Debtor
Envia Holdings, LLC

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595