MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar No. 66849
KATHY QUON BRYANT, ESQ., CA Bar No. 213156
100 Shoreline Highway, Suite B-160
Mill Valley, California 94941
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@meyerslawgroup.com
kquonbryant@meyerslawgroup.com

Attorneys for the Richard Vasquez and Robin C. Silvera Vasquez Trust,
Secured Creditor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br>ENVIA HOLDINGS, LLC,<br>　　　　　　Debtor. | Case No. 22-50489-MEH<br>Chapter 11<br>Date:　　July 13, 2023<br>Time:　 2:30 p.m.<br>Place:　U.S. Bankruptcy Court<br>　　　　280 So. First St., Ctrm. 11<br>　　　　San Jose, California<br>Judge:　Hon. M. Elaine Hammond |

**SECURED CREDITOR RICHARD VASQUEZ AND ROBIN C.
SILVERA VASQUEZ TRUST'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

The RICHARD VASQUEZ AND ROBIN C. SILVERA VASQUEZ TRUST (the "Trust"), through its Co-Trustee ROBIN C. SILVERA VASQUEZ ("Ms. Silvera Vasquez"), moves for relief from the automatic stay in the within chapter 11 case of ENVIA HOLDINGS, LLC (the "Debtor"), pursuant to the provisions of 11 U.S.C. § 362(d), in order to complete its foreclosure upon real property collateral located at 325-B Denio Ave., Gilroy, California (the "Real Property"), presently owned by the Debtor. As demonstrated below, cause exists to lift the automatic stay based on the express terms of the *Combined Plan and Disclosure Statement* filed by the Debtor on September 8, 2022 (the "Plan," docket no. 34) and confirmed by the Court's order entered on December 12, 2022 (docket no. 49).

**I. BACKGROUND**

The record of this Court, together with the declaration of Robin Silvera Vasquez (the

-1-

"Vasquez Decl.") filed concurrently herewith, establishes the following pertinent facts:

A. <u>**Secured Loan**</u>

1. In June 2019, the Trust sold to the Debtor the Real Property for the purchase price of $2,000,000.00. In order to pay for its purchase, the Debtor made a downpayment of $300,000.00 and executed a *Straight Note* dated May 30, 2019 in the amount of $1,700,000.00 in favor of the Trust (the "Note"); and a *Short Form Deed of Trust and Assignment of Rents* (the *"Deed of Trust"*) encumbering the Real Property as a first lien to secure payment of the Note. The Real Property consists of approximately 19.24 acres, on which a home and other structures are situated. Attached as **Exhibits "A" and "B,"** respectively, to the Vasquez Decl. are copies of the Note and the Deed of Trust.

2. The Debtor's principal, Nathaniel Villarreal, is the nephew of Richard Vasquez, the other Co-Trustee of the Trust and former husband of Ms. Silvera Vasquez.

3. The Note, prior to amendment, provided for interest at the rate of five percent (5%) per annum, to be paid by the Debtor in annual installments of $392,657.16 for the term of five years. The Note also required the Debtor to pay the Trust's attorneys' fees and other costs in the event of suit, and imposed a late fee in the amount of 15% with respect to any installment not paid within 10 days of becoming due. The Note provided that all amounts owing under the Note would become due upon default, at the Trust's option, but did not provide for an increase of the interest rate, or a "default rate," upon default.

B. <u>**Addendum**</u>

4. In 2020, the Debtor requested modifications of the Note to extend the term and to accommodate immediate cashflow shortages. Although the agreed-upon terms were critical to the Trust in ensuring its own cashflow, the Trust agreed to assist. After extensive negotiations, as of April 9, 2020, the parties entered into an *Addendum to Straight Note* (the "Addendum," and together with the Note and the Deed of Trust, the "Loan Documents"). A copy of the Addendum is attached as **Exhibit "C"** to the Vasquez Decl.

5. Under the terms of the Addendum, the Debtor's obligations under the Note were restructured as follows:

A. The existing obligation would be converted to a two-year "bridge loan" in the amount of $1,785,000.00 (the principal amount of the Note plus unpaid interest that had accrued in the first year), upon which eight quarterly principal-and-interest payments would be made, each in the amount of $27,088.86;

B. Interest would continue to accrue at the rate of 5% per annum, but of that amount, 2% would be paid currently and the other 3% would accrue;

C. At the end of the two-year "bridge loan," the accrued unpaid interest (3%) would be added to the principal amount of the Note, after reduction by the principal payments that had been made, resulting in a new principal balance of $1,738,870.20 as of June 15, 2022;

D. That balance was then to be paid over 60 quarterly payments (15 years) of $41,118.55 each. Any amount remaining owed at the end of the 15 years would then be due; and

E. The late fee was reduced to 10% of any late payment.

6. Prior to the sale of the Real Property to the Debtor, Ms. Silvera Vasquez, as a beneficiary of the Trust, relied upon monthly income from the Real Property for her living expenses. Upon the sale of the Real Property to the Debtor, Ms. Silvera Vasquez, a retired woman in her 60s, expected to continue to receive the income, in the form of payments on the Note. Any cessation of those payments would cause Ms. Silvera Vasquez serious cash flow impairments, likely compelling her to sell personal assets or to borrow funds at personal expense. Therefore, it was important to Ms. Silvera Vasquez that Note payments be timely made, and the Trust therefore required a late fee (at first 15%, later reduced to 10% to accommodate the Debtor) to cover the additional costs that would be incurred by Ms. Silvera Vasquez in the event of late payments.

7. Indeed, because of the Debtor's defaults, Ms. Silvera Vasquez has been devastated financially, and has been forced to borrow funds against her life insurance policy, and to incur a continuing balance of credit card debt and auto financing debt exceeding $200,000, accruing interest at rates as high as 20%, just to cover the living expenses that are not being paid by the Debtor's Note payments.

LAW OFFICES
MEYERS LAW GROUP, P.C.
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

8. The Debtor defaulted immediately and continuously after signing the Addendum, making payments only sporadically, late, partially or not at all. Meanwhile, Mr. Villarreal assured the Trust that he would sell the Real Property and pay the Loan Documents in full very soon. However, no payments or sale were forthcoming.

9. The Trust later learned that the Debtor had in fact been suspended by the Franchise Tax Board as of September 3, 2019 – Mr. Villarreal never disclosed the suspension to the Trust. The Debtor was eventually reinstated in February 2022. The Trust also learned that the Debtor had not paid property taxes encumbering the Real Property, and in fact to this day, delinquent property taxes, interest and penalties continue to increase and encumber the property, and the property has been tax defaulted.

10. Therefore, on January 25, 2022, the Trust, through Pacific Coast Title Company as trustee, served and recorded a *Notice of Default and Election to Sell Under Deed of Trust*. No payment was made by the Debtor in response to the notice, and therefore on May 16, 2022, the Trust, through a foreclosure service, recorded a *Notice of Trustee's Sale No. 22-303-SCL*, scheduling a sale of the Real Property for June 3, 2022, pursuant to the Deed of Trust. Since that date, the foreclosure sale has been postponed several times due to the Debtor's bankruptcy filing, and currently, no sale date is pending.

11. In addition to its serial defaults of its payment obligations under the Loan Documents, as stated, the Debtor has also failed to pay property taxes accruing on the Real Property for multiple years. Those unpaid property taxes are now increasing with the imposition of penalties and substantial interest charges, in a current amount estimated to be in excess of $120,000.

12. On May 2, 2022, in an apparent attempt to halt the foreclosure, the Debtor filed a complaint (the "Complaint") against the Trust[1] in the Santa Clara County Superior Court (the "State Court"), asserting baseless claims for interference with economic advantage, business disparagement and similar supposed infractions (the "State Court Action"). The Trust answered the Complaint, denying all material allegations and asserting multiple affirmative defenses.

---

[1] The Complaint actually named Mr. Vasquez and Ms. Silvera Vasquez in their individual capacities, but the thrust of the allegations, and the attempted relief (see next paragraph), were made against the Trust, which defended against the action.

13. On May 31, 2022, the Debtor filed an *ex parte* application in the State Court Action seeking a temporary restraining order preventing the foreclosure sale (the "TRO Application"). The application made the same baseless allegations against the Trust as contained in the Complaint, with no competent evidence whatsoever to support its contentions.

14. On the same day, May 31, 2022, the State Court issued an order denying the TRO Application without prejudice. The State Court has since stayed further proceedings in the State Court Action, pending the outcome of the Debtor's chapter 11 case. The Debtor has taken no action to recommence prosecution of the State Court Action, either by seeking an end to the stay or otherwise.

**C.    The Chapter 11 Case and Plan**

15. When the Debtor was unable to stop the Trust's foreclosure sale in the State Court, it resorted to bankruptcy. On June 2, 2022 (the "Petition Date"), the eve of the scheduled foreclosure sale, the Debtor filed a petition in this Court for relief under chapter 11 of the Bankruptcy Code. Thereafter, on June 15, 2022, in the Debtor's Schedule D of *Creditors Who Have Claims Secured by Property* filed (docket no. 16), the Debtor scheduled the Trust (erroneously identified again as Richard Vasquez in his individual capacity) as holding a disputed claim in the amount of $1,750,000.00, and estimated the value of the Real Property as $2,900,000 in its Schedule A/B Assets.

16. On December 12, 2022, the Court entered an order (docket no. 49) confirming the Plan, and the Plan became effective on December 26, 2022 (the "Effective Date").

17. The Plan states that the Real Property was appraised at $2,727,000 (Plan, p. 7, Sec. II. E). Under the terms of the Plan, the Debtor has six months from the Effective Date in which to sell the Real Property. The six-month period expired on June 26, 2023 (the "Sale Deadline").

18. Specifically, the Plan provides that if the Debtor does not sell the Real Property by the Sale Deadline, the Trust, as a Class 2 secured creditor, "shall have relief from the automatic stay to proceed with its State Law rights." Plan, Article 4.01.

19. Similarly, Article 7 of the Plan also states that in the scenario where "Properties do not sell within 6 months of the Effective Date", "Secured Claims have relief from the automatic stay to

enforce their liens."

20. As of the date of this Motion, the Debtor has failed to sell the Real Property and the Debtor's obligations under the Loan Documents have not been satisfied. Therefore, pursuant to the terms of the Plan, the Trust now seeks relief from the automatic stay to proceed with its right to foreclose on the Real Property under state law.

**D.     The Objection to The Trust Claims**

21. On October 6, 2022, the Trust filed two claims, Claim No. 4 and Claim No. 5, as secured claims, each in the amount of $1,869,635.54 (not including out-of-pocket costs or interest and late fees continuing to accrue), in the Debtor's case, based on the Loan Documents (the "Trust Claims").

22. On April 21, 2023, the Debtor filed a *Debtor's Objection to Claim of Richard Vasquez and Robin C. Silvera Vasquez Revocable Trust* (docket no. 59, the "Objection"), challenging the Trust Claims on grounds of lateness and duplication, and challenging the claim amount asserted by the Trust.

23. In the Objection the Debtor has not challenged the validity of the Loan Documents or the resulting lien against the Real Property, nor has it commenced an adversary proceeding against the Trust to contest that validity. The Debtor has only challenged the amount owed under the Loan Documents, and has effectively conceded the validity and enforceability of the Trust's lien against the Real Property that secures that amount.

24. On June 1, 2023, the Trust filed its response to the Objection (docket no. 64, the "Response"). As set forth in the Response, the amount of the Trust's secured claim, as properly calculated by the terms of the Loan Documents, was estimated to be at least $1,998,732.32 as of May 31, 2023. Since then, the Trust has advised the Debtor, through counsel, that as of June 15, 2023, the amount owing under the Loan Documents was $2,020,661.92. That amount will continue to increase, as interest, late fees and foreclosure costs continue to accrue, and legal and accounting fees continue to be incurred.

25. On June 8, 2023, the Court conducted an initial hearing of the Objection, at which time, the Court sustained the Debtor's objection to Claim No. 5 as a duplicate of Claim No. 4, with

LAW OFFICES
MEYERS LAW GROUP, P.C.
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

the Trust's consent.

26. On June 22, 2023, the Debtor withdrew its objection to Claim No. 4 (docket no. 67).

27. On June 23, 2023, the Trust amended Claim No. 4 to fix the amount owed on its secured claim at $2,020,661.92, as of June 15, 2023. Interest will accrue at the rate of $249.34 per day after June 15, 2023, together with all applicable late fees, legal costs and other charges and expenses reimbursable under the terms of the Loan Documents.

## II. RELIEF REQUESTED

Based on the foregoing, the Trust seeks the following relief pursuant to this motion:

A. Relief from the automatic stay of 11 U.S.C. § 362(a) to permit the Trust to foreclose upon the Real Property; and

B. Waiver of the 14-day stay of enforcement, as provided in Rule 4001(a)(3) of the Bankruptcy Rules.

## III. LEGAL DISCUSSION

Based upon the foregoing facts and circumstances, the Trust is entitled to relief from the automatic stay in order to allow it to complete its foreclosure upon the Real Property. The Debtor's failure to perform as directed under the Plan, and its waiver of the automatic stay by the express terms of the Plan, constitute sufficient cause for the relief sought herein.

**A.  Cause Exists For Relief From Stay.**

Section 362(d) of the Bankruptcy Code describes the circumstances under which relief from the automatic stay imposed by Section 362(a) may be granted, and provides the following, in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
> (A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d). "As is well understood, the subparts of § 362(d) are in the disjunctive. Relief from stay may be granted for cause under (d)(1), *or* it may be granted if both requirements of lack of equity and lack of necessity for reorganization are shown." *United Enterprises, Ltd. v. ACI Sunbow, LLC (In re ACI Sunbow, LLC)*, 206 B.R. 213, 219 (Bankr. S.D.Cal. 1997) (emphasis in the original). "Accordingly, relief may be granted for 'cause' under subsection 362(d)(1), despite the existence of equity in the collateral, which would preclude relief from the stay under 11 U.S.C. section 362(d)(2)." *Id*. (quoting *In re Can-Alta Properties, Ltd.*, 87 B.R. 89, 91 (9th Cir. B.A.P. 1988).

Here, cause for stay relief is straightforward: The Plan proposed by the Debtor and confirmed by the Court expressly provides for relief from the stay to complete the Trust's foreclosure if a sale has not occurred by June 26, 2023. No sale occurred within that time, and therefore, by the Debtor's own terms, the Trust is entitled to foreclose upon the Real Property. Effectively, the Debtor waived the protection of the automatic stay in the event of no timely sale of the Real Property, and that no-sale event has now occurred. The Trust is therefore entitled to entry of an order, needed in part for clarity of record in dealing with a title company, by virtue of the Debtor's waiver of protection.

Notably, waivers of the automatic stay incorporated in the terms of a confirmed chapter 11 plan have been found valid and enforceable against the debtor even where the debtor files a second chapter 11 case. *In re A. Hirsch Realty, LLC*, 583 B.R. 583 (Bankr. D.Mass. 2018); *In re BGM Pasadena, LLC*, 2016 WL 3212243 (C.D.Cal. 2016). As stated in *Hirsch*, "The Court concludes that the waiver of the protection of the automatic stay constitutes 'cause' under 11 U.S.C. § 362(d)(1) for relief from the automatic stay and that the Debtor has not satisfied that burden of demonstrating that Blue Hill [the secured creditor] is adequately protected or otherwise not entitled to rely upon the waiver of the automatic stay approved . . . as part of a consensual plan of reorganization in its prior case." *Id*. at 602. "When such a waiver is made a part of a confirmed plan or a court-approved settlement agreement, either with the consent of unsecured creditors or after they have received notice and an opportunity to object, absent changed circumstances, such waivers have routinely been enforced." *BGM Pasadena, supra*, at *4 (internal quotations and citation omitted).

Moreover, termination of the stay is warranted where the secured creditor is a private individual rather than an institutional lender, and the individual depends on the debtor's payments for his or her income. *Margell v. Bouquet Investments (In the Matter of Bouquet Investments)*, 32 B.R. 988 (Bankr. C.D.Cal. 1983). *Bouquet*, like the case at bar, involved a sale of real property where the sellers (a husband and wife) took back a purchase-money deed of trust. *Id*. at 988. There, the court held that the existence of an equity cushion alone was insufficient to maintain the automatic stay, and accordingly, granted the secured creditors relief from the stay. *Id*.

The court found it "logically impossible *not* to consider at least indirectly the economic situation of the parties." *Id*. at 991. (emphasis in the original). While the court acknowledged that it knew "very little about the financial situation of the creditors,]" it acknowledged that they once owned a piece of land, and they had $11,000 earlier available to them in the year which they used to pay real estate taxes the debtor failed to pay. *Id*. at 991 – 992. "They are not a bank. Under the circumstances, I am not willing to assume that they can continue to sustain the negative cash flow they have experienced these last few months, even if there is equity." *Id*. at 992.

Cause for relief from stay is also present given the damage that the Debtor's delays in sale of the Real Property have caused to the Trust and its beneficiary, Ms. Silvera Vasquez. As detailed above, the Debtor's repeated defaults under the Loan Documents have resulted in great hardship for Ms. Silvera Vasquez, who has been compelled to borrow funds against her life insurance and incur substantial high-interest credit card debt to pay for her living expenses. Despite this, the Trust did not oppose the Debtor's Plan and allowed it to be confirmed without objection or modification. Now, the Debtor has defaulted even under its own Plan, worsening Ms. Silvera Vasquez's plight further. This too is sufficient cause for relief from the stay, and the Debtor should be held to bargain it struck unilaterally in its Plan.

B. <u>Waiver Of The 14-Day Stay Of Enforcement Is Appropriate.</u>

Finally, Rule 4001(a)(3) of the Bankruptcy Rules provides that "An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." However, waiver of the Rule 4001(a)(3) stay is appropriate where the timing and delay inherent under the

LAW OFFICES
MEYERS LAW GROUP, P.C.
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

California statutory foreclosure scheme gives the debtor all of the protection intended by Rule 4001(a)(3). *Scripps GSB I, LLC v. A Partners, LLC (In re A Partners, LLC)*, 344 B.R. 114, 128 (Bankr. E.D.Cal. 2006).

The Trust respectfully requests that the Court waive the Rule 4001(a)(3) stay requirement in order to allow it to immediately re-notice a sale date for the Real Property. Under these circumstances, where the foreclosure sale cannot be conducted without a new notice of sale as required under Cal. Civ. Code § 2924(g), and may not be conducted without at least twenty days' notice under Cal. Civ. Code § 2924(f), the Debtor will receive the protection intended by Rule 4001(a)(3) under California state law.

## IV. CONCLUSION

Based on the foregoing, the Trust respectfully requests the entry of an order granting this Motion and providing the following relief:

A. Relief from the automatic stay of 11 U.S.C. § 362(a) to permit the Trust to foreclose upon the Real Property;

B. Waiver of the 14-day stay of enforcement, as provided in Rule 4001(a)(3) of the Bankruptcy Rules; and

C. Such other and further relief as the Court may deem appropriate.

DATED: June 27, 2023

        MEYERS LAW GROUP, P.C.

By   */s/ Merle C. Meyers*
Merle C. Meyers, Esq.
Attorneys for Richard Vasquez and Robin C. Silvera Vasquez Trust, Secured Creditor