MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar No. 66849
KATHY QUON BRYANT, ESQ., CA Bar No. 213156
100 Shoreline Highway, Suite B-160
Mill Valley, California 94941
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@meyerslawgroup.com
          kquonbryant@meyerslawgroup.com

Attorneys for the Richard Vasquez and Robin C. Silvera Vasquez Trust,
Secured Creditor

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 22-50489-MEH |
| ENVIA HOLDINGS, LLC, | Chapter 11 |
| Debtor. | Date: July 13, 2023<br>Time: 2:30 p.m.<br>Place: U.S. Bankruptcy Court<br>280 So. First St., Ctrm. 11<br>San Jose, California<br>Judge: Hon. M. Elaine Hammond |

**DECLARATION OF ROBIN SILVERA VASQUEZ IN SUPPORT OF
SECURED CREDITOR RICHARD VASQUEZ AND ROBIN C. SILVERA VASQUEZ
TRUST'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

I, ROBIN SILVERA VASQUEZ, declare as follows:

      1.     I am an individual who resides in Pickton, Texas, and a Co-Trustee of the RICHARD VASQUEZ AND ROBIN C. SILVERA VASQUEZ TRUST (the "Trust"), a secured creditor in the chapter 11 case of ENVIA HOLDINGS, LLC (the "Debtor"), and in such capacity, I am personally familiar with each of the facts stated herein, to which I could competently testify if called upon to do so in a court of law.

      2.     I make this declaration in support of *Secured Creditor Richard Vasquez And Robin C.*

LAW OFFICES
MEYERS LAW GROUP, P.C.
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

*Silvera Vasquez Trust's Motion For Relief From The Automatic Stay* (the "Motion").[1]

3.　In June 2019, the Trust sold to the Debtor the Real Property for the purchase price of $2,000,000.00. In order to pay for its purchase, the Debtor made a downpayment of $300,000.00 and executed a *Straight Note* dated May 30, 2019 in the amount of $1,700,000.00 in favor of the Trust (the "Note"); and a *Short Form Deed of Trust and Assignment of Rents* (the *"Deed of Trust"*) encumbering the Real Property as a first lien to secure payment of the Note. The Real Property consists of approximately 19.24 acres, on which a home and other structures are situated. Attached as **Exhibits "A" and "B,"** respectively, are true and correct copies of the Note and the Deed of Trust.

4.　The Debtor's principal, Nathaniel Villarreal, is the nephew of Richard Vasquez, the other Co-Trustee of the Trust and my former husband.

5.　The Note, prior to amendment, provided for interest at the rate of five percent (5%) per annum, to be paid by the Debtor in annual installments of $392,657.16 for the term of five years. The Note also required the Debtor to pay the Trust's attorneys' fees and other costs in the event of suit, and imposed a late fee in the amount of 15% with respect to any installment not paid within 10 days of becoming due. The Note provided that all amounts owing under the Note would become due upon default, at the Trust's option, but did not provide for an increase of the interest rate, or a "default rate," upon default.

6.　In 2020, the Debtor requested modifications of the Note to extend the term and to accommodate immediate cashflow shortages. Although the agreed-upon terms were critical to the Trust in ensuring its own cashflow, the Trust agreed to assist. After extensive negotiations, as of April 9, 2020, the parties entered into an *Addendum to Straight Note* (the "Addendum," and together with the Note and the Deed of Trust, the "Loan Documents"). A true and correct copy of the Addendum is attached hereto as **Exhibit "C."**

7.　Under the terms of the Addendum, the Debtor's obligations under the Note were restructured as follows:

A.　The existing obligation would be converted to a two-year "bridge loan" in the amount of $1,785,000.00 (the principal amount of the Note plus unpaid interest that had

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

---
[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Case 22-50489 Doc 68 Filed 06/27/23 Entered 06/27/23 11:22:18 Page 2 of 7

accrued in the first year), upon which eight quarterly principal-and-interest payments would be made, each in the amount of $27,088.86;

        B.     Interest would continue to accrue at the rate of 5% per annum, but of that amount, 2% would be paid currently and the other 3% would accrue;

        C.     At the end of the two-year "bridge loan," the accrued unpaid interest (3%) would be added to the principal amount of the Note, after reduction by the principal payments that had been made, resulting in a new principal balance of $1,738,870.20 as of June 15, 2022;

        D.     That balance was then to be paid over 60 quarterly payments (15 years) of $41,118.55 each. Any amount remaining owed at the end of the 15 years would then be due; and

        E.     The late fee was reduced to 10% of any late payment.

8.     Prior to the sale of the Real Property to the Debtor, as a beneficiary of the Trust, I relied upon monthly income from the Real Property for my living expenses. Upon the sale of the Real Property to the Debtor, I, a retired woman in my 60s, expected to continue to receive the income, in the form of payments on the Note. Any cessation of those payments would cause me serious cash flow impairments, likely compelling me to sell personal assets or to borrow funds at personal expense. Therefore, it was important to me that Note payments be timely made, and the Trust therefore required a late fee (at first 15%, later reduced to 10% to accommodate the Debtor) to cover the additional costs that would be incurred by me in the event of late payments.

9.     Indeed, because of the Debtor's defaults, I have been devastated financially, and have been forced to borrow funds against my life insurance policy, and to incur a continuing balance of credit card debt and auto financing debt exceeding $200,000, accruing interest at rates as high as 20%, just to cover my living expenses that are not being paid by the Debtor's Note payments.

10.     The Debtor defaulted immediately and continuously after signing the Addendum, making payments only sporadically, late, partially or not at all. Meanwhile, Mr. Villarreal assured the Trust that he would sell the Real Property and pay the Loan Documents in full very soon. However, no payments or sale were forthcoming.

LAW OFFICES
MEYERS LAW GROUP, P.C.
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

-3-
DECLARATION OF ROBIN SILVERA VASQUEZ IN SUPPORT OF SECURED CREDITOR RICHARD VASQUEZ AND ROBIN C. SILVERA

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

11.     The Trust later learned that the Debtor had in fact been suspended by the Franchise Tax Board as of September 3, 2019 – Mr. Villarreal never disclosed the suspension to the Trust. The Debtor was eventually reinstated in February 2022. The Trust also learned that the Debtor had not paid property taxes encumbering the Real Property, and in fact to this day, delinquent property taxes, interest and penalties continue to increase and encumber the property, and the property has been tax defaulted.

12.     Therefore, on January 25, 2022, the Trust, through Pacific Coast Title Company as trustee, served and recorded a *Notice of Default and Election to Sell Under Deed of Trust*. No payment was made by the Debtor in response to the notice, and therefore on May 16, 2022, the Trust, through a foreclosure service, recorded a *Notice of Trustee's Sale No. 22-303-SCL*, scheduling a sale of the Real Property for June 3, 2022, pursuant to the Deed of Trust. Since that date, the foreclosure sale has been postponed several times due to the Debtor's bankruptcy filing, and currently, no sale date is pending.

13.     In addition to its serial defaults of its payment obligations under the Loan Documents, as stated, the Debtor has also failed to pay property taxes accruing on the Real Property for multiple years. Those unpaid property taxes are now increasing with the imposition of penalties and substantial interest charges, in a current amount estimated to be in excess of $120,000.

14.     On May 2, 2022, in an apparent attempt to halt the foreclosure, the Debtor filed a complaint (the "Complaint") against the Trust[2] in the Santa Clara County Superior Court (the "State Court"), asserting baseless claims for interference with economic advantage, business disparagement and similar supposed infractions (the "State Court Action"). The Trust answered the Complaint, denying all material allegations and asserting multiple affirmative defenses.

15.     On May 31, 2022, the Debtor filed an *ex parte* application in the State Court Action seeking a temporary restraining order preventing the foreclosure sale (the "TRO Application"). The application made the same baseless allegations against the Trust as contained in the Complaint, with no competent evidence whatsoever to support its contentions.

---

[2] The Complaint actually named Mr. Vasquez and me in our individual capacities, but the thrust of the allegations, and the attempted relief (see next paragraph), were made against the Trust, which defended against the action.

Case 22-50489 Doc# 68 Filed 06/27/23 Entered 06/27/23 11:22:18 Page 4 of 7

16.     On the same day, May 31, 2022, the State Court issued an order denying the TRO Application without prejudice.  The State Court has since stayed further proceedings in the State Court Action, pending the outcome of the Debtor's chapter 11 case.  The Debtor has taken no action to recommence prosecution of the State Court Action, either by seeking an end to the stay or otherwise.

17.     When the Debtor was unable to stop the Trust's foreclosure sale in the State Court, it resorted to bankruptcy.  On June 2, 2022 (the "Petition Date"), the eve of the scheduled foreclosure sale, the Debtor filed a petition in this Court for relief under chapter 11 of the Bankruptcy Code.  Thereafter, on June 15, 2022, in the Debtor's Schedule D of *Creditors Who Have Claims Secured by Property* filed (docket no. 16), the Debtor scheduled the Trust (erroneously identified again as Richard Vasquez in his individual capacity) as holding a disputed claim in the amount of $1,750,000.00, and estimated the value of the Real Property as $2,900,000 in its Schedule A/B Assets.

18.     On December 12, 2022, the Court entered an order (docket no. 49) confirming the Plan, and the Plan became effective on December 26, 2022 (the "Effective Date").

19.     The Plan states that the Real Property was appraised at $2,727,000 (Plan, p. 7, Sec. II. E).  Under the terms of the Plan, the Debtor has six months from the Effective Date in which to sell the Real Property.  The six-month period expired on June 26, 2023 (the "Sale Deadline").

20.     Specifically, the Plan provides that if the Debtor does not sell the Real Property by the Sale Deadline, the Trust, as a Class 2 secured creditor, "shall have relief from the automatic stay to proceed with its State Law rights."  Plan, Article 4.01.

21.     Similarly, Article 7 of the Plan also states that in the scenario where "Properties do not sell within 6 months of the Effective Date", "Secured Claims have relief from the automatic stay to enforce their liens."

22.     As of the date of this Motion, the Debtor has failed to sell the Real Property and the Debtor's obligations under the Loan Documents have not been satisfied.  Therefore, pursuant to the terms of the Plan, the Trust now seeks relief from the automatic stay to proceed with its right to foreclose on the Real Property under state law.

LAW OFFICES
MEYERS LAW GROUP, P.C.
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA  94941

Case 22-50489  Doc# 68  Filed 06/27/23  Entered 06/27/23 11:22:18  Page 5 of 7

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

23.     On October 6, 2022, the Trust filed two claims, Claim No. 4 and Claim No. 5, as secured claims, each in the amount of $1,869,635.54 (not including out-of-pocket costs or interest and late fees continuing to accrue), in the Debtor's case, based on the Loan Documents (the "Trust Claims").

24.     On April 21, 2023, the Debtor filed a *Debtor's Objection to Claim of Richard Vasquez and Robin C. Silvera Vasquez Revocable Trust* (docket no. 59, the "Objection"), challenging the Trust Claims on grounds of lateness and duplication, and challenging the claim amount asserted by the Trust.

25.     In the Objection the Debtor has not challenged the validity of the Loan Documents or the resulting lien against the Real Property, nor has it commenced an adversary proceeding against the Trust to contest that validity.  The Debtor has only challenged the amount owed under the Loan Documents, and has effectively conceded the validity and enforceability of the Trust's lien against the Real Property that secures that amount.

26.     On June 1, 2023, the Trust filed its response to the Objection (docket no. 64, the "Response").  As set forth in the Response, the amount of the Trust's secured claim, as properly calculated by the terms of the Loan Documents, was estimated to be at least $1,998,732.32 as of May 31, 2023.  Since then, the Trust has advised the Debtor, through counsel, that as of June 15, 2023, the amount owing under the Loan Documents was $2,020,661.92.  That amount will continue to increase, as interest, late fees and foreclosure costs continue to accrue, and legal and accounting fees continue to be incurred.

27.     On June 8, 2023, the Court conducted an initial hearing of the Objection, at which time, the Court sustained the Debtor's objection to Claim No. 5 as a duplicate of Claim No. 4, with the Trust's consent.

28.     On June 22, 2023, the Debtor withdrew its objection to Claim No. 4 (docket no. 67).

29.     On June 23, 2023, the Trust amended Claim No. 4 to fix the amount owed on its secured claim at $2,020,661.92, as of June 15, 2023.  Interest will accrue at the rate of $249.34 per day after June 15, 2023, together with all applicable late fees, legal costs and other charges and expenses reimbursable under the terms of the Loan Documents.

1    30.    I declare under penalty of perjury that the foregoing is true and correct, and that this

2    declaration was executed on June 27, 2023 at Pickton, Texas.

4                                             /s/  *Robin C. Silvera Vasquez*
                                                    Robin C. Silvera Vasquez

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
100 SHORELINE HWY., STE. B-160
MILL VALLEY, CALIFORNIA 94941

DECLARATION OF ROBIN SILVERA VASQUEZ IN SUPPORT OF SECURED CREDITOR RICHARD VASQUEZ AND ROBIN C. SILVERA
VASQUEZ'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY
32849.DOC 20176